The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission adopts and AFFIRMS the findings of the Deputy Commissioner as follows.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. (506812) Defendants paid compensation to plaintiff for one week.
1. (718019) At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. (718019) The employer-employee relationship existed between defendant-employer and plaintiff.
3. (718019) INA/Cigna Insurance Company was the carrier on the risk.
4. (718019) Plaintiff's average weekly wage was $374.00
5. (718019) The date of the alleged injury was June 15, 1995.
In addition, the parties stipulated into evidence an indexed packet of medical records and reports.
 ***********
Based upon the Findings of Fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. In January 1995 plaintiff, who was then fifty-eight years old, was employed by defendant-employer at its Earth Grains bakery. His position was sanitation helper and his job duties included cleaning the utensils used at the bakery, sweeping, mopping and clearing away leftover dough. Periodically, the bakery would undergo an extensive cleaning and at those times plaintiff would clean out the chute through which the dough passed. He would have to use an eight-foot stepladder in order to reach into the chute.
2. On January 14, 1995 plaintiff sustained a compensable injury by accident when the scraper he was using to remove dough in the chute became caught so that he lost his balance and fell off of the ladder and onto the rollers below him. He landed on his left side and experienced immediate pain in the left chest area and under his left shoulder, and he had trouble breathing. He was taken to the emergency room where x-rays revealed fractures to three ribs. Dr. Mokris, an orthopedic surgeon, then assumed his care. When Dr. Mokris examined him on January 17, he was no longer complaining of shortness of breath and he was complaining of pain mostly in the posterior rib margin on his left side. The doctor advised him that the fractures would probably heal within six weeks and that he should stay out of work for two weeks and then only return to work at light duty for four weeks.
3. Defendants admitted liability for benefits under the Workers' Compensation Act for plaintiff's rib fractures and paid compensation to him for one week pursuant to a Form 21 agreement approved by the Industrial Commission. He then returned to work at light duty for a period of time and eventually returned to the bread department.
4. In May 1995 plaintiff was seen in follow-up by Dr. Tsahakis, an orthopedic surgeon who was a partner of Dr. Mokris. He complained of some mid-thoracic pain at that appointment, but Dr. Tsahakis found no tenderness in his entire spine and to no signs of a pinched nerve. The doctor's opinion was that the rib fractures had healed, that plaintiff could perform regular work and that there was no permanent partial disability resulting from the fall.
5. Plaintiff continued working for the bakery until February 1, 1996 when the facility closed. He testified that on approximately June 15, 1995 he lifted a ladder at work and experienced a sharp pain from his shoulder blade to his neck. Although he indicated that he sought medical treatment that day, no medical reports were submitted from Pro-Med until the August 25, 1995 office visit where he complained of symptoms of bronchitis and some neck pain which he attributed to the fall at work. He also described some weakness in his right arm when he was trying to do some overhead lifting of a ladder. The doctor at Pro-Med referred him to Dr. Grivas, a neurosurgeon.
6. Dr. Grivas examined plaintiff on August 28, 1995. Plaintiff again related his symptoms to the fall at work and described significant neck pain with radicular symptoms. Dr. Grivas recommended that he undergo an MRI but, since defendants disputed the causal relationship between this condition and the fall, payment was not authorized and plaintiff did not undergo the test until March 4, 1997. The MRI revealed mild to moderate spinal stenosis from C4 through C7 and generalized degenerative disk disease, but there was no discrete disk herniation although Dr. Grivas read the test as showing a large bulging disk at C4-5. Dr. Grivas recommended surgery to decompress and fuse the C4-5 interspace.
7. Plaintiff has alleged that his cervical spine problem was a proximate result of his January 14, 1995 injury by accident. However, neither Dr. Mokris nor Dr. Tsahakis found evidence of a cervical spine condition when they examined him following that injury, and plaintiff did not complain of neck pain or radicular-type symptoms in the months that followed the injury. Rather, his complaints were in the area where his ribs had been broken, including his thoracic spine. Consequently, the history Dr. Grivas received was not accurate. When presented with the correct facts, Dr. Grivas could not relate the cervical spine condition he diagnosed to plaintiff's fall at work, even as an aggravating factor.
8. The cervical spine condition for which plaintiff was treated beginning August 25, 1995 was not proven to have been a proximate result of the January 14, 1995 injury by accident.
9. Plaintiff reached maximum medical improvement with respect to that injury by May 1995 and sustained no permanent partial disability.
10. On or about June 15, 1995 plaintiff sustained a specific traumatic incident of the work assigned when he lifted a ladder at work. However, the earliest record of medical treatment following this incident was August 25, 1995 and he related his problems at that time to the earlier injury in January. In fact, he did not file a claim for the incident until the date of hearing almost two years later. None of the doctors who testified were asked about whether the June 1995 incident was a proximate cause, directly or by aggravation, of the cervical spine condition diagnosed by Dr. Grivas. It was clear that plaintiff had a pre-existing degenerative spine condition which could have become symptomatic without any trauma. Consequently, he did not prove that he sustained a back injury as a result of the June 15, 1995 specific traumatic incident or that the cervical spine condition which he was subsequently diagnosed was a proximate result of that incident.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. (I.C. 506812) In that plaintiff received compensation for the temporary total disability he sustained as a result of his January 14, 1995 injury by accident, in that he sustained no permanent partial disability due to the injury and in that the cervical spine condition with which he was subsequently diagnosed was not proven to have been a proximate result of the injury, he is not entitled to further compensation for injury. G.S. § 97-29; G.S. § 97-31; Click v. Pilot Freight Carriers, Inc., 300 N.C. 164
(1980).
2. (I.C. 506812) Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident, but not the treatment for his cervical spine condition. G.S. § 97-2(19); G.S. § 97-25.
3. (I.C. 718019) Although plaintiff sustained a specific traumatic incident of the work assigned on or about June 15, 1995, he did not prove that he sustained a back injury as a result of the incident or that the cervical spine condition with which he was subsequently diagnosed was a proximate result of the incident. G.S. § 97-2(6); Click v. Pilot Freight Carriers, Inc., 300 N.C. 164
(1980).
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. (I.C. 506812) Plaintiff's claim for additional workers' compensation benefits for his January 14, 1995 injury by accident is DENIED.
2. (I.C. 718019) Plaintiff's claim for workers' compensation benefits for his June 1995 specific traumatic incident is hereby DENIED.
3. Each side shall pay its own costs.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER